# Michael Faillace & Associates, P.C.

#### Employment and Litigation Attorneys

60 E. 42nd Street, Suite 4510
New York, New York 10165
_____

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

September 7, 2021

**VIA ECF**

Magistrate Judge Sarah Netburn
U.S. District Court Southern District of New York
40 Foley Square
New York, NY 10007

*Re: Tepox Gutierrez et al v. 300 West 46th St. Corp. et al*
*Case No. 18-cv-04239*

Your Honor:

This office represents the Plaintiffs in the above referenced matter. Plaintiffs write jointly with Defendants to submit this letter setting forth our views on why the agreed upon settlement in this matter is fair and reasonable.

On May 18, 2021, the parties agreed to a negotiated settlement ("Agreement") after extensive settlement discussions during mediation before Your Honor. A copy of the Negotiated Settlement and Release is attached hereto as "Exhibit A." Please note, we are still awaiting the signature of one of our clients and anticipate having that by tomorrow. We therefore ask the Court to approve the settlement pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015).

Plaintiffs brought this suit alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), violations of the New York Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and violations of the minimum and overtime wage orders of the New York Commission of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).

Plaintiffs allege that they were employed by Defendants as a busboys and food runners at Defendants' Greek restaurant, d/b/a "Brasserie Athenee", located at 300 West 46th Street, New York, New York 10036. Plaintiffs also allege Defendants engaged in a wide variety of FLSA and NYLL violations, including failure to pay appropriate, unauthorized deductions from wages and gratuities, and failure to provide annual notice and wage statements. Defendants deny the Plaintiffs' allegations, but agree that a settlement is desirable at this stage to avoid incurring further legal fees and protracted litigation.

### I.    The Proposed Settlement is Fair and Reasonable

Under the settlement, Defendants will pay the total sum of $75,000.00 (Seventy-Five Thousand Dollars) to Plaintiffs to settle all the claims as alleged in the Complaint.. Of the settlement amount, three fifths (3/5), or $45,000.00 (Forty-Five Thousand Dollars) will go to the

September 7, 2021
Page 2

Plaintiffs, with $30,000.00 (Thirty Thousand Dollars) to go to Plaintiffs' attorneys for attorney's fees and expenditures.

Plaintiffs allege that they are entitled to back wages of approximately $276,690.13 from Defendants, which Defendants deny. Plaintiffs estimate that if they had recovered in full for their claims, exclusive of attorney's fees, they would be entitled to approximately $291,690.13. A copy of Plaintiffs' damages chart, breaking down each amount sought from Defendants, is attached as "Exhibit B." Plaintiffs understand the central issues are disputed, and that should they continue to litigate their claims, there is no guarantee they would recover what they believe they are owed, especially considering the restaurant is no longer in business, which is why a settlement is desirable at this time.

Under *Lynn's Food*, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Considering the risks in this case outlined above, Plaintiffs believe that this settlement is an excellent result, and should be approved as fair and reasonable. *See Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

## II.    Plaintiffs' Attorneys' Fees are Fair and Reasonable

Under the settlement, and in accordance with his retainer agreement with the Plaintiffs, Plaintiffs' counsel will receive $30,000.00 (Thirty Thousand Dollars) from the settlement fund as attorneys' fees and costs. This represents forty percent (40%) of the recovery in this litigation which is in compliance with the Plaintiffs' retainer agreements, which provides that forty percent (40%) of Plaintiffs' recovery will be retained by the firm.

These rates are reasonable given the experience of the attorneys in wage and hour matters, and their performance in this case. *See Perez v. Platinum Plaza 400 Cleaners, Inc.,* Index No. 12-cv-9353 (PAC), 2015 U.S. Dist. LEXIS 78079, *3 n. 1 (S.D.N.Y. June 16, 2015) (awarding requested rates to Michael Faillace and one of his associates at this firm, Joshua Androphy, finding they had "demonstrated entitlement to these rates based on their experience in wage and hour litigation and their performance in this case").

While district courts in this Circuit have commonly limited attorneys' fees to 1/3 of the recovery in FLSA settlements, the Second Circuit Court of Appeals recently rejected such a

September 7, 2021
Page 3

proportionality rule.  *Fisher v. S.D. Prot. Inc.*, 948 F.3d 593, 2020 U.S. App. LEXIS 3295 (2d Cir. Feb. 4, 2020).  In *Fisher* the Second Circuit reversed a district court's presumption of a 33% limit as an outcome determinative factor on attorneys' fees in FLSA settlements.  *Id.*  The Second Circuit observed that if Plaintiffs'' attorneys were limited to such a proportional fee, no rational attorney would take small recovery on "run of the mill" cases and employees would be left with little redress for alleged violations. *Id.* 2020 U.S. App. LEXIS 3295, *17.  Awarding attorneys' fees of 40% of the total settlement is reasonable and in accordance with *Fisher* and with Plaintiffs' retainer agreement with his attorneys.[1]

Given Plaintiffs' counsels' significant experience representing plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain an excellent result with relatively low expense due to the parties' cooperative exchange of information and frequent and on-going negotiations. A brief biography of each attorney who performed billed work outlined in the Billing Record attached as "Exhibit C" and their rates in this matter is as follows:

      i.      Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and have been in practice since 1983. Michael Faillace reflected in Exhibit C as "MF" is billed at a rate of $450 per hour. From 1983 to 2000, Mr. Faillace was in-house Employment Counsel with International Business Machines Corporation (IBM).  He taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and am a nationally-renowned speaker and writer on employment law.  He is also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

      ii.      Gennadiy Naydenskiy is a Litigation Associate of Michael Faillace & Associates P.C. and has been a member of the firm since August 2018. Gennadiy Naydenskiy reflected in Exhibit C as "GN" is billed at a rate of $350 per hour. Prior to joining Michael Faillace and Associates, P.C, Gennadiy Naydenskiy was a solo practitioner from October 2014, focusing primarily on FLSA wage and hour cases. Prior to founding his solo practice, Gennadiy Naydenskiy was an associate for Harrison, Harrison, and Associates a boutique law firm that focus most of their practice on FLSA wage and hour individual, multi-Plaintiffs, collective and class actions.

      iii.      Khalil Huey is a Litigation Associate of Michael Faillace & Associates P.C and has been a member of the firm since June 2021. Khalil Huey reflected in Exhibit C as "KH" is billed at a rate of $375 per hour. Prior to joining Michael Faillace and Associates P.C, Khalil Huey was of counsel for the Chandler Law Firm PLLC and an associate for the same firm that focused on labor and

---

[1] Defendants take no position regarding the amount of attorneys' fees requested and leave that issue to the sound discretion of the Court

September 7, 2021
Page 4

employment law for individuals and as labor counsel for several school districts, and large public employee unions in the State of New York.

      iv.     Paralegal time reflected in Exhibit C as "PL" is billed at $125 per hour.

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

Respectfully submitted,

/s/ Khalil Huey
Khalil Huey Esq.
MICHAEL FAILLACE & ASSOCIATES, P.C.
Attorneys for the Plaintiffs

Enclosures

CC: Andrew P. Karamouzis (via ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GERARDO TEPOX GUTIERREZ (A/K/A ALEX TEPOX),          Civil Action No: 18-cv-04239
LORENZO ANTONIO BRAVO BRAVO, and SANTOS             (ER)(SN)
TARAX, individually and on behalf of others similarly
situated,

        Plaintiffs,

    -against-

300 WEST 46TH ST. CORP. (D/B/A BRASSERIE
ATHENEE), SOTIRIOS KARAMOUZIS, and CHRISTOS
DOE,

        Defendants.
------------------------------------------------------------------------X

## NEGOTIATED SETTLEMENT AGREEMENT & RELEASE

This Negotiated Settlement Agreement and Release ("Agreement") is made by and between defendants, 300 West 46th St. Corp. (d/b/a Brasserie Athenee), Sotirios Karamouzis and Christos Vrachnis (incorrectly sued herein as Christos Doe), on their own behalf and on behalf of their affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities and companies, predecessors, successors and assigns, and their past and present owners, principals, shareholders, partners, members, officers, directors, trustees, employees, attorneys, insurers, representatives, fiduciaries and agents in their individual and/or representative capacities (collectively, the "Defendants" or "Employer"), and plaintiffs, Gerardo Tepox Gutierrez (a/k/a Alex Tepox), Santos Tarax, and Rodrigo Tepox (collectively "Plaintiffs" or "Employees") on their own behalf and on behalf of their heirs, executors, administrators, successors and assigns (Plaintiffs and Defendants are hereinafter collectively referred to as the "Parties").

**WHEREAS**, Defendants and Plaintiffs are parties to a lawsuit filed in the United States District Court, Southern District of New York, styled *Gerardo Tepox Gutierrez (a/k/a Alex Tepox), Lorenzo Antonio Bravo Bravo, and Santos Tarax, individually and on behalf of all others similarly situated v. 300 West 46th St. Corp. (d/b/a Brasserie Athenee), Sotirios Karamouzis, and Christos Doe,* Case No. 18-cv-04239 (ER)(SN) (the "Civil Action");

**WHEREAS**, in the Civil Action, Plaintiffs asserted, among others, claims under the Fair Labor Standards Act and New York State Labor Laws seeking: unpaid wages, unpaid minimum wage, statutory damages, recovery of equipment costs, damages associated with unlawful deductions, damages for failing to timely pay wages, liquidated damages, attorneys' fees and costs, and interest for Defendants' purported failure to pay Plaintiffs minimum and overtime wages, failure to provide wage statements and wage notices pursuant to New York Labor Law § 195, requiring Plaintiffs to pay the costs and expenses of purchasing equipment, making unlawful

deductions from tips and wages, and failing to timely pay Plaintiffs (together with all other claims Plaintiffs have asserted or could assert relating to wage notices or the payment of wages and benefits, including any claim under 26 USC § 7434, the "Wage and Hour Claims");

**WHEREAS**, Defendants joined issue with their filing and serving of their Answer (Doc. No. 14) and Amended Answer (Doc. No. 27), which denied the allegations in Plaintiffs' Complaint filed in the Civil Action;

**WHEREAS**, the Defendants defended and continue to defend against all claims in the Civil Action and categorically deny Plaintiffs' allegations asserted in the Civil Action, deny engaging in any wrongdoing whatsoever, and deny that they were or are liable or owe any wages, damages, monies or obligations to Plaintiffs with respect to the allegations or causes of action asserted in the Civil Action;

**WHEREAS,** Plaintiffs' Counsel filed a motion to be relieved as counsel for Plaintiff Lorenzo Antonio Bravo Bravo (Doc. No. 52);

**WHEREAS,** Magistrate Judge Sarah Netburn dismissed Lorenzo Antonio Bravo Bravo from this action for failure to prosecute (Doc. No. 53);

**WHEREAS**, during the course of the Parties' discovery, a material dispute has arisen regarding Plaintiffs' Wage and Hour Claims;

**WHEREAS**, Plaintiffs represent, warrant and acknowledge that there are *bona fide* disputes between Plaintiffs and Defendants as to whether Plaintiffs are entitled to receive unpaid wages as alleged;

**WHEREAS**, the Parties understand and agree that Defendants and any and all present and former affiliated entities, predecessor entities, successor entities and respective present and former owners, principals, shareholders, partners, members, officers, directors, trustees, employees, professional employer organizations, administrators, executors, attorneys, insurers, representatives, fiduciaries, agents, heirs, and assigns, individually and in their official capacities, deny each and every assertion of wrongdoing alleged by Plaintiffs;

**WHEREAS**, the Parties understand and agree that neither the making of this Agreement, nor anything contained herein shall, in any way, be construed or considered to be an admission by the Defendants of any liability, guilt or noncompliance with any federal, state, city, or local statute, constitution, rule, ordinance, public policy, human rights or civil rights law, wage-hour law, wage-payment law, prevailing wage law, tort law, contract, common law, or of any other wrongdoing, unlawful conduct, liability or breach of any duty whatsoever to the Plaintiffs.  It is expressly understood and agreed that this Agreement is being entered into solely for the purpose of avoiding the costs of litigation and amicably resolving all matters in controversy, disputes, causes of action, claims contentions and differences of any kind whatsoever, whether known or unknown, which have been or could have been alleged by the Parties against each other;

2

**WHEREAS**, Plaintiffs, with full assistance and through consultation with counsel, freely and voluntarily enter into this Agreement in exchange for the promises contained herein which pertain to Defendants and the full payment due from Defendants as provided for herein;

**WHEREAS**, the Court has made no findings as to the merits of the claims or allegations contained in Plaintiffs' Complaint;

**WHEREAS**, the terms and conditions of this Agreement have been explained to the Parties by their counsel;

**NOW THEREFORE**, in consideration of the foregoing, the mutual promises and the Release contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged and agreed, the Parties each agree as follows:

1. SETTLEMENT TERMS

1.1 Settlement Amount.

(A)    Defendants agree to pay the Settlement Amount, which shall fully resolve and satisfy any and all amounts to be paid to Plaintiffs and any and all claims for attorneys' fees and costs in respect of this Civil Action. Defendants will not be required to pay more than the Settlement Amount under the terms of this Agreement. The Settlement Amount shall comprise of all amounts payable under Paragraphs 1.1(B) and 1.2 of this Agreement.

(B)    From the Settlement Amount, $75,000.00 (Seventy-Five Thousand Dollars), Plaintiffs shall receive payment as follows:

(i)    $25,000.00 (Twenty-Five Thousand Dollars) to be paid within 15 days of dismissal of the Civil Action with prejudice, as follows:

(a) alleged unpaid wages in the gross sum of $3,261.63 (Three Thousand, Two Hundred and Sixty-One Dollars and Sixty-Three Cents) less all applicable state, federal and local taxes and withholdings to Gerardo Tepox Gutierrez;

(b) alleged liquidated damages, statutory damages and/or interest in the gross sum of $3,261.63 (Three Thousand, Two Hundred and Sixty-One Dollars and Sixty-Three Cents) to Gerardo Tepox Gutierrez;

(c) alleged unpaid wages in the gross sum of $1,325.73 (One Thousand Three Hundred and Twenty-Five Dollars and Seventy-Three Cents), less all applicable state, federal and local taxes and withholdings to Santos Tarax;

3

(d) alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,325.74 (One Thousand Three Hundred and Twenty-Five Dollars and Seventy-Four Cents) to Santos Tarax;

(e) alleged unpaid wages in the gross sum of $2,912.63 (Two Thousand Nine Hundred, Twelve Dollars and Sixty-Three Cents), less all applicable state, federal and local taxes and withholdings to Rodrigo Tepox;

(f) alleged liquidated damages, statutory damages and/or interest in the gross sum of $2,912.64 (Two Thousand Nine Hundred, Twelve Dollars and Sixty-Four Cents) to Rodrigo Tepox; and

(g) Plaintiffs' counsel, Michael Faillace & Associates, P.C., the gross sum of $10,000.00 (Ten Thousand Dollars) as payment towards attorneys' fees and costs.

(ii)    $25,000 (Twenty-Five Thousand Dollars) to be paid within 45 days of the dismissal of the Civil Action with prejudice, as follows:

(a) alleged unpaid wages in the gross sum of $3,261.63 (Three Thousand, Two Hundred and Sixty-One Dollars and Sixty-Three Cents), less all applicable state, federal and local taxes and withholdings to Gerardo Tepox Gutierrez;

(b) alleged liquidated damages, statutory damages and/or interest in the gross sum of $3,261.63 (Three Thousand, Two Hundred and Sixty-One Dollars and Sixty-Three Cents) to Gerardo Tepox Gutierrez;

(c) alleged unpaid wages in the gross sum of $1,325.73 (One Thousand Three Hundred and Twenty-Five Dollars and Seventy-Three Cents), less all applicable state, federal and local taxes and withholdings to Santos Tarax;

(d) alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,325.74 (One Thousand Three Hundred and Twenty-Five Dollars and Seventy-Four Cents) to Santos Tarax;

(e) alleged unpaid wages in the gross sum of $2,912.63 (Two Thousand Nine Hundred, Twelve Dollars and Sixty-Three Cents), less all applicable state, federal and local taxes and withholdings to Rodrigo Tepox;

(f) alleged liquidated damages, statutory damages and/or interest in the gross sum of $2,912.64 (Two Thousand Nine Hundred, Twelve Dollars and Sixty-Four Cents) to Rodrigo Tepox; and

(g) Plaintiffs' counsel, Michael Faillace & Associates, P.C., the gross sum of $10,000.00 (Ten Thousand Dollars) as payment towards attorneys' fees and costs.

(iii)    $25,000 (Twenty-Five Thousand Dollars) to be paid within 75 days of the dismissal of the Civil Action with prejudice, as follows:

(a) alleged unpaid wages in the gross sum of $3,261.63 (Three Thousand, Two Hundred and Sixty-One Dollars and Sixty-Three Cents) less all applicable state, federal and local taxes and withholdings to Gerardo Tepox Gutierrez;

(b) alleged liquidated damages, statutory damages and/or interest in the gross sum of $3,261.63 (Three Thousand, Two Hundred and Sixty-One Dollars and Sixty-Three Cents) to Gerardo Tepox Gutierrez;

(c) alleged unpaid wages in the gross sum of $1,325.73 (One Thousand Three Hundred and Twenty-Five Dollars and Seventy-Three Cents), less all applicable state, federal and local taxes and withholdings to Santos Tarax;

(d) alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,325.74 (One Thousand Three Hundred and Twenty-Five Dollars and Seventy-Four Cents) to Santos Tarax;

(e) alleged unpaid wages in the gross sum of $2,912.63 (Two Thousand Nine Hundred, Twelve Dollars and Sixty-Three Cents), less all applicable state, federal and local taxes and withholdings to Rodrigo Tepox;

(f) alleged liquidated damages, statutory damages and/or interest in the gross sum of $2,912.64 (Two Thousand Nine Hundred, Twelve Dollars and Sixty-Four Cents) to Rodrigo Tepox; and

(g) Plaintiffs' counsel, Michael Faillace & Associates, P.C., the gross sum of $10,000.00 (Two Thousand Five Hundred Dollars) as payment towards attorneys' fees and costs.

(C)    The settlement payments set forth in Paragraphs 1(B)(i), (ii) and (iii) above, shall each be remitted by check made payable to "Michael Faillace & Associates, P.C., as Attorneys." Upon receipt of same, Plaintiffs' counsel shall be solely responsible for disbursing all settlement payments to Plaintiffs as set forth in Paragraphs 1(B)(i)(a) – (g), 1(B)(ii)(a) – (g), and 1(B)(iii)(a) – (g), respectively.

(D)  A W-2 and IRS Form 1099 will be issued to Gerardo Tepox Gutierrez, Santos Tarax and Rodrigo Tepox. An IRS Form 1099 will be provided to Michael Faillace & Associates, P.C.

1.2 Tax Characterization.

(A)  For tax purposes, payments in Paragraphs 1.1(B)(i)(a), (c), and (e); 1.1(B)(ii)(a), (c), and (e); and 1.1(B)(iii)(a), (c), and (e) shall be treated as unpaid wages for which a Form W-2 shall be issued and payments in Paragraphs 1.1(B)(i)(b), (d), and (f); 1.1(B)(ii)(b), (d), and (f) and 1.1(B)(iii)(b), (d), and (f) shall be treated as interest and/or liquidated damages and issue without any withholdings for which a Form 1099 shall be issued to Plaintiffs. Plaintiffs shall provide to Defendants on or before the Effective Date completed and executed IRS Forms W-4 and W-9. Plaintiffs shall also provide to Defendants on or before the Effective Date a completed and executed IRS Form W-9 for their attorneys. No payment shall be issued under this Agreement until completed and executed IRS Forms W-4 and W-9 are tendered.

(B)  Payments treated as unpaid wages pursuant to Paragraph 1.1 shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholdings and each respective employee's share of FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number and/or taxpayer identification number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Paragraph 1.1 shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number and/or taxpayer identification number on an IRS Form 1099. Said funds shall be listed in Box 3 ("Other Income") of the issued IRS Form 1099. Payments of attorneys' fees and costs pursuant to Paragraph 1.1(B)(i)(g), 1.1(B)(ii)(g) and 1.1(B)(iii)(g) shall be made to Plaintiffs' Counsel without withholding and reported on an IRS Form 1099 under the payee's name and taxpayer identification.

(C)  Defendants shall be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to the employer share of the FICA tax and any federal and state unemployment tax due with respect to the amounts treated as wages pursuant to Paragraph 1.1(B). Any such payroll taxes ordinarily borne by the employer shall be paid by Defendants in addition to the Settlement Amount and shall not be paid out of the Settlement Amount. Defendants shall not be responsible for: (i) any payroll taxes imposed on employees, rather than employers; (ii) any taxes imposed on the portion of the payments to Plaintiffs treated as payment of interest and/or liquidated damages reported on Forms 1099; or (iii) any taxes imposed with respect to the payment of attorneys' fees to Plaintiffs' Counsel under this Agreement.

6

(D)     Plaintiffs acknowledge and agree that, except for the employer share of the FICA tax and any federal and state unemployment tax due with respect to the amounts treated as wages as specified in Paragraph 1.1(B), Plaintiffs shall be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement. Additionally, Plaintiffs agree to indemnify and hold Defendants harmless for any and all federal, state, city, and local taxes, interest, charges, and penalties that are due, may become due or are otherwise assessed against Plaintiffs at any time with respect to any portion of the Settlement Amount received by Plaintiffs except for the employer share of the FICA tax and any federal and state unemployment tax due with respect to the amounts treated as wages as specified in Paragraph 1.1(B).

(E)     The employee portion of all applicable income and payroll taxes shall be the sole responsibility of Plaintiffs.

1.3    <u>Settlement Checks</u>. Subject to the provisions of Paragraphs 1.2 and 2.1, the payments referenced in Paragraph 1.1(B)(i), (ii) and (iii) above shall be delivered by Defendants to the Plaintiffs' counsel, via overnight mail with tracking service to: Khalil Huey, Esq., Michael Faillace & Associates, P.C. In the event that the payments referenced in Paragraph 1.1(B)(i), (ii) and (iii) above are not received by the payment date described in Paragraph 1.1(B), Plaintiffs' counsel shall serve a written notice ("Default Notice") upon counsel for the Defendants, Andrew P. Karamouzis, Esq., Moran • Karamouzis LLP, 265 Sunrise Highway, Suite 61, Rockville Centre, NY 11570, akaramouzis@mka-law.com via email, and the Defendants shall have ten (10) calendar days from receipt of same to cure the default by making such payment. Upon Defendants' failure to cure a default within ten (10) calendar days of receipt of the Default Notice, counsel for Plaintiffs shall be entitled to enter judgment against the Defendants in the amount of $75,000 (Seventy-Five Thousand Dollars), less any sums paid on account hereunder.

1.4    Amount - Payable as Attorneys' Fees and Costs. Except for the amount payable as attorneys' fees and costs, as specified in Paragraphs 1.1(B), the Parties acknowledge and agree that Defendants are not liable to Plaintiffs for any other attorneys' fees and costs due or owing in connection with this Civil Action.

## 2.  COURT APPROVAL AND EFFECTIVENESS OF SETTLEMENT

### 2.1 <u>Court Approval of FLSA Settlement</u>.

(A)     On or before September 7, 2021, Plaintiffs and Defendants will file a Joint Motion seeking an Order approving the settlement of Plaintiffs' Wage and Hour Claims (the "Approval Motion").

(B)     In the Approval Motion, the Parties shall request that the Court approve the settlement of the Wage and Hour Claims as final, fair, reasonable, adequate, and binding on Plaintiffs, based on the terms of this Agreement, and shall

dismiss the Civil Action with prejudice and without attorneys' fees or costs to any party except as specifically provided for in this Agreement.

(C)     If the Court denies the Approval Motion either in part or in its entirety, then the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement, if any. Should such efforts be unsuccessful and/or denied, the Civil Action will proceed as if no settlement had been attempted, and the Parties will retain all of their respective rights in these proceedings.

(D)     The Parties will work together, diligently and in good faith, to obtain expeditiously a final Order approving the Settlement Agreement and dismissing this Civil Action with prejudice.

(E)     The payments required by Paragraphs 1.1(B) hereof from Defendants shall be delivered to Plaintiffs' counsel as set forth in Paragraph 1.3 commencing after Defendants' counsel's receipt of a final Order of the Court approving the Agreement and dismissal of the Civil Action with prejudice. To the extent that the Court rejects this Agreement, in whole or in part, and/or fails to issue an Order dismissing this Civil Action with prejudice, Defendants shall have no obligation to provide the payments specified in Paragraph 1 hereof. Further, in the event the Court entirely denies said application for approval, the obligations of the parties shall be deemed null and void and the Civil Action shall continue as though the parties had never entered into this Agreement.

2.2 Effectiveness. This Agreement shall be effective only when: (a) this Agreement is executed by all Parties and (b) a final Order of the Court has been issued approving the terms of settlement specified in this Agreement and dismissing this Civil Action with prejudice; provided, however, that the provisions of Paragraph 2 of this Agreement shall become effective immediately upon execution of this Agreement by Defendants and Plaintiffs. The "Effective Date" shall be the first business day after the conditions precedent in this Paragraph are all satisfied.

3.     Release of Claims. In consideration for the total payment of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) (the "Settlement Amount") as set forth in Paragraphs 1.1 and 1.2 herein, Plaintiffs hereby completely, irrevocably and unconditionally release, waive and forever discharge any and all claims, charges, complaints, judgments, or liabilities of any kind against Defendants, their heirs, executors, administrators, estate, predecessors, successors, assigns, divisions, affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities and companies, business units, committees, groups, and their current and former owners, principals, shareholders, partners, members, officers, directors, trustees, employees, attorneys, accountants, insurers, fiduciaries, representatives, and agents thereof both individually and in their business capacities (collectively referred to as "RELEASEES"), whether known or unknown, which against the RELEASEES, Plaintiffs or Plaintiffs' heirs, executors, administrators, successors, and/or assigns, may now have or hereinafter can, shall or may have from the beginning of time until the date of the complete execution of this Agreement relating to

the Wage and Hour Claims, all claims arising under The Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.,* the New York Labor Law, as amended (including all regulations and minimum wage orders), the New York Labor Law §§190-198, as amended, the New York Labor Law §§220, *et seq.*, the New York Labor Law §§230, *et seq.*, the New York Wage Hour and Wage Payment Laws, as amended, and the New York Minimum Wage Act, as amended, 26 U.S.C. §7434, all claims for compensation or remuneration of any kind, unpaid wages, unpaid overtime, unpaid prevailing wages and supplemental benefits, improper deductions, spread-of-hours pay, split-shift pay, call in pay, vacation pay, sick pay, holiday pay, severance pay, bonuses, deferred compensation, incentive plans, medical, dental, life or disability insurance coverage, or any other fringe benefit, claims for statutory damages and/or penalties for failing to provide proper wage notices and/or wage statements, any other claims that were or could have been asserted in the Civil Action, and any claim for attorneys' fees or costs incurred in pursuing these or any other legal claims against any of the RELEASEES, except for fees and costs incurred in pursuing a claim for breach of this Agreement, as set forth in Paragraph 20 herein.

4. <u>Representations and Warranties of Plaintiffs</u>.  By signing this Agreement, Plaintiffs acknowledge and agree that:

(A) They have been afforded a reasonable and sufficient period of time for review, for deliberation thereon and for negotiation of the terms of this Agreement, and they have been specifically advised to consult with legal counsel or a representative of their choice, had the opportunity to do so and have, in fact, done so by consulting with Plaintiffs' Counsel;

(B) They have read and understand the terms of this Agreement, all of which have been fully explained to them;

(C) They are not affected by any condition, drug, alcohol or medication that would interfere with or impair their ability to understand this Agreement;

(D) They have signed this Agreement freely and voluntarily and without duress or coercion and with full knowledge of its significance and consequences and of the rights relinquished, surrendered, released and discharged hereunder;

(E) The only consideration for signing this Agreement is the terms stated herein and no other promise, agreement or representation of any kind have been made to Plaintiffs by any person or entity whatsoever to cause them to sign this Agreement;

(F) They have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim in this Civil Action, and have full authority to enter into this Agreement and the release contained in Paragraph 3 above;

(H) Plaintiffs have not been subjected to any discriminatory or retaliatory conduct from Defendants; and

9

(G)    Upon payment of the amounts due pursuant to Paragraph 1 above, Plaintiffs will have been paid in full for all time worked in connection with their employment with Defendants and Plaintiffs are owed no other amounts or forms of compensation, including, but not limited to, any wages, overtime, minimum wage, prevailing wages, supplemental benefits, spread-of-hours pay, split-shift pay, call in pay, vacation pay, sick pay, holiday pay, accrued benefits, severance, bonus, tips, and/or commission from Defendants.

5.     The Parties acknowledge that the RELEASEES do not admit that they have done anything wrong or treated Plaintiffs unlawfully.  The Parties acknowledge that Defendants agreed to this Agreement with the understanding that the terms have been reached because this settlement will: (i) avoid the further expense of costly and protracted litigation; and (ii) put the claims in this Civil Action to rest.  Nothing in this Agreement shall be deemed or read as an admission by any RELEASEES of liability or damages.

6.     If any provision of this Agreement is held by a court of competent jurisdiction to be illegal, void or unenforceable, such provision shall have no effect; however, the remaining provisions shall be enforced to the maximum extent possible.

7.     Plaintiffs represent that they will not file or pursue any complaints, lawsuits, charges, claims, demands, appeals or actions, whether currently pending or that may be filed in the future, of any kind in any forum (including court, administrative or governmental agency, or arbitration) against the Defendants for any compensation or remuneration of any kind, wages, overtime, prevailing wages and supplemental benefits, improper deductions, accrued benefits, the Wage and Hour Claims asserted in this Civil Action, and all claims arising under The Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.,* the New York Labor Law, as amended (including all regulations and minimum wage orders), the New York Labor Law §§190-198, as amended, the New York Labor Law §§220, *et seq.*, the New York Labor Law §§230, *et seq.*, the New York Wage Hour and Wage Payment Laws, as amended, and the New York Minimum Wage Act, up to the date of this Agreement and under 26 U.S.C. §7434.

8.     Plaintiffs understand that, to the extent permitted by law, Plaintiffs waive all rights to redress for any rejection of such future applications for re-employment by or reinstatement with Defendants. Plaintiffs understand that if they apply to work for any of the Defendants at any time, the Defendants, based on this paragraph, may deny Plaintiffs employment for any position the Plaintiffs seek and that such denial will not be a violation of any federal, state or municipal statute and/or common law right and will not be deemed retaliatory in any way.

9.     Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or portion thereof or interest therein, including, but not limited to, any interest in the Civil Action.

10.    **Plaintiffs are hereby advised to retain an attorney for the purpose of reviewing the Agreement, represent and warrant that they have in fact retained Michael Faillace & Associates, P.C., for the purpose of reviewing this Agreement, know that they may be giving up important rights, have carefully read and fully considered the terms of this Agreement, have had ample opportunity to negotiate the terms of this Agreement through their attorney,**

**have had ample opportunity to discuss the terms of the Agreement with attorneys or advisors of their own choosing, agree to all of the terms of this Agreement, intend to be bound by them and to fulfill the promises set forth herein, and voluntarily and knowingly enter into this Agreement with full understanding of its binding legal consequences and have executed this Agreement voluntarily, knowingly and with such advice from their attorneys as they deem appropriate**.

11.    Enforcement of this Agreement shall be governed and interpreted by, and under, the laws of the state of New York, regardless of whether any party is, or may hereafter be, a resident of another state.

12.    No waiver, modification, or amendment of the terms of this Agreement shall be valid or binding unless in writing, signed by or on behalf of all of the Parties, and then only to the extent set forth in such written waiver, modification or amendment subject to Court approval, if necessary.

13.    This Agreement shall be binding upon, and inure to the benefit of the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

14.    The Parties have negotiated and mutually drafted all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties entering into this Agreement, unless otherwise expressly stated.

15.    The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval to this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

16.    The Parties agree to have the United States District Court, Southern District of New York retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

17.    This Agreement constitutes the entire agreement of the Parties concerning the subjects included herein.  This Agreement may not be changed or altered, except in writing and signed by all Parties.

18.    In any interpretation of this Agreement the masculine, feminine or neutral pronouns, respectively, shall include the other genders.

19.    The Parties agree that should there be any ambiguity with respect to the interpretation of this Agreement, no inference will be drawn against either party as the drafter of this Agreement.  The Agreement will be interpreted by the trier of fact, without regard to the identity of the drafter of the Agreement or any of its terms or provisions.

11

20.     The Parties agree not to seek any interest, fees or costs from each other and, except as provided in this Agreement, agree to be responsible for the payment of their own attorneys' fees, costs and disbursements incurred in connection with the Civil Action. This provision does not preclude any party from seeking reasonable costs, attorneys' fees and interest, as well as reasonable costs, attorneys' fees and interest incurred in making a motion for same in the event there is a material breach of this Agreement.

21.     This Agreement may be executed in counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument.  In the event that any signature is delivered by facsimile transmission or by e-mail delivery of an ADOBE ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page was an original thereof.

22.     This Agreement supersedes all prior agreements or understandings of any kind, whether oral and written, and represents the entire Agreement of the Parties.  This Agreement is intended to provide a memorialize the full and final compromise and settlement of all matters in controversy, disputes, causes of action, claims, contentions and differences between the Parties to this Agreement.  This Agreement represents the entire understanding of the Parties with respect to the subject matter hereof.

**THEREFORE,** the Parties to this Agreement now voluntarily and knowingly execute this Agreement as follows:


Dated:  September  __, 2021                    _____
                                               GERARDO TEPOX GUTIERREZ
                                               (A/K/A ALEX TEPOX)


STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF _____ )

On September  ___, 2021 before me personally came to me Gerardo Tepox Gutierrez (a/k/a Alex Tepox), known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.


                                               _____
                                               Notary Public


Dated:  September  __, 2021                    _____
                                               SANTOS TARAX

12

STATE OF NEW YORK   )
                        ) ss.:
COUNTY OF _____)

On September ___, 2021 before me personally came to me Santos Tarax, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

Dated:  September ___, 2021

_____
RODRIGO TEPOX

STATE OF NEW YORK   )
                        ) ss.:
COUNTY OF _____)

On September ___, 2021 before me personally came to me Rodrigo Tepox, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

**300 WEST 46TH ST. CORP.**
**(D/B/A BRASSERIE ATHENEE)**

Dated:  September___, 2021

_____
By: Andrew P. Karamouzis
Firm: Moran • Karamouzis LLP
Title: Outside Counsel

13

**SOTIRIOS KARAMOUZIS**

Dated:  September____, 2021

_____

By: Andrew P. Karamouzis_____
Firm: Moran • Karamouzis LLP
Title: Outside Counsel_____

**CHRISTOS VRACHNIS**

Dated:  September____, 2021

_____

By: Andrew P. Karamouzis_____
Firm: Moran • Karamouzis LLP
Title: Outside Counsel_____

14

STATE OF NEW YORK )
) ss.:
COUNTY OF _____ )

On September ___, 2021 before me personally came to me Santos Taras, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

RODRIGO TEPOX

Dated: September ___, 2021

STATE OF NEW YORK )
) ss.:
COUNTY OF _____ )

On September ___, 2021 before me personally came to me Rodrigo Tepox, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

**300 WEST 46TH ST. CORP.**
**(D/B/A BRASSERIE ATHENEE)**

Dated: September ___, 2021

By: Andrew P. Karamouzis
Firm: Moran - Karamouzis LLP
Title: Outside Counsel

13

Privileged Settlement Communication

Subject to Revision / Correction

| Plaintiff | Pay Period From | Pay Period To | No. Weeks in Pay Period | Hours Per Week in Period | No. of SOH Days Per Wk in Period | Calc. Regular Rate of Pay | Calc. OT Rate of Pay | Minimum Wage Rate | Minimum Overtime (OT) | Lawful Weekly Pay | "Credited" Weekly Pay | Underpayment Per Week | Unpaid Wages & OT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gerardo Tepox Gutierrez | 6/1/2012 | 10/31/2012 | 22 | 50 | 0 | $ 3.00 | $ 4.50 | $ 7.25 | $ 10.88 | $ 398.75 | $ 120.00 | $ 278.75 | $ 6,132.50 |
| | 11/1/2012 | 12/31/2012 | 9 | 59 | 0 | $ 3.50 | $ 5.25 | $ 7.25 | $ 10.88 | $ 496.63 | $ 140.00 | $ 356.63 | $ 3,209.63 |
| | 1/1/2013 | 10/31/2013 | 43 | 50 | 0 | $ 3.50 | $ 5.25 | $ 7.25 | $ 10.88 | $ 398.75 | $ 120.00 | $ 278.75 | $ 11,986.25 |
| | 11/1/2013 | 12/31/2013 | 9 | 59 | 0 | $ 3.50 | $ 5.25 | $ 7.25 | $ 10.88 | $ 496.63 | $ 140.00 | $ 356.63 | $ 3,209.63 |
| | 1/1/2014 | 10/31/2014 | 43 | 50 | 0 | $ 3.50 | $ 5.25 | $ 8.00 | $ 12.00 | $ 440.00 | $ 120.00 | $ 320.00 | $ 13,760.00 |
| | 11/1/2014 | 12/31/2014 | 9 | 59 | 0 | $ 3.50 | $ 5.25 | $ 8.00 | $ 12.00 | $ 548.00 | $ 140.00 | $ 408.00 | $ 3,672.00 |
| | 1/1/2015 | 10/31/2015 | 43 | 50 | 0 | $ 3.50 | $ 5.25 | $ 8.75 | $ 13.13 | $ 481.25 | $ 120.00 | $ 361.25 | $ 15,533.75 |
| | 11/1/2015 | 12/31/2015 | 9 | 59 | 0 | $ 3.50 | $ 5.25 | $ 8.75 | $ 13.13 | $ 599.38 | $ 140.00 | $ 459.38 | $ 4,134.38 |
| | 1/1/2016 | 10/31/2016 | 43 | 50 | 0 | $ 3.50 | $ 5.25 | $ 9.00 | $ 13.50 | $ 495.00 | $ 120.00 | $ 375.00 | $ 16,125.00 |
| | 11/1/2016 | 12/31/2016 | 9 | 59 | 0 | $ 3.50 | $ 5.25 | $ 9.00 | $ 13.50 | $ 616.50 | $ 140.00 | $ 476.50 | $ 4,288.50 |
| | 1/1/2017 | 10/31/2017 | 43 | 50 | 0 | $ 3.50 | $ 5.25 | $ 11.00 | $ 16.50 | $ 605.00 | $ 120.00 | $ 485.00 | $ 20,855.00 |
| | 11/1/2017 | 12/31/2017 | 9 | 59 | 0 | $ 3.50 | $ 5.25 | $ 11.00 | $ 16.50 | $ 753.50 | $ 140.00 | $ 613.50 | $ 5,521.50 |
| | 1/1/2018 | 5/23/2018 | 20 | 50 | 0 | $ 3.50 | $ 5.25 | $ 13.00 | $ 19.50 | $ 715.00 | $ 120.00 | $ 595.00 | $ 11,900.00 |
| | | | | | | | | | | | | | $ 120,328.13 |
| Santos Tarax | 8/1/2016 | 10/31/2016 | 13 | 54 | 0 | $ 3.50 | $ 5.25 | $ 9.00 | $ 13.50 | $ 549.00 | $ 120.00 | $ 429.00 | $ 5,577.00 |
| | 11/1/2016 | 12/31/2016 | 9 | 63 | 0 | $ 3.50 | $ 5.25 | $ 9.00 | $ 13.50 | $ 670.50 | $ 140.00 | $ 530.50 | $ 4,774.50 |
| | 1/1/2017 | 10/31/2017 | 43 | 54 | 0 | $ 3.50 | $ 5.25 | $ 11.00 | $ 16.50 | $ 671.00 | $ 120.00 | $ 551.00 | $ 23,693.00 |
| | 11/1/2017 | 12/31/2017 | 9 | 63 | 0 | $ 3.50 | $ 5.25 | $ 11.00 | $ 16.50 | $ 819.50 | $ 140.00 | $ 679.50 | $ 6,115.50 |
| | 1/1/2018 | 4/1/2018 | 13 | 54 | 0 | $ 3.50 | $ 5.25 | $ 13.00 | $ 19.50 | $ 793.00 | $ 120.00 | $ 673.00 | $ 8,749.00 |
| | | | | | | | | | | | | | $ 48,909.00 |
| Rodrigo Tepox | 12/1/2012 | 12/30/2013 | 56 | 54 | 0 | $ 3.00 | $ 4.50 | $ 7.25 | $ 10.88 | $ 442.25 | $ 120.00 | $ 322.25 | $ 18,046.00 |
| | 12/31/2013 | 12/30/2014 | 52 | 54 | 0 | $ 3.00 | $ 4.50 | $ 8.00 | $ 12.00 | $ 488.00 | $ 120.00 | $ 368.00 | $ 19,136.00 |
| | 12/31/2014 | 12/30/2015 | 52 | 54 | 0 | $ 3.00 | $ 4.50 | $ 8.75 | $ 13.13 | $ 533.75 | $ 120.00 | $ 413.75 | $ 21,515.00 |
| | 12/31/2015 | 12/30/2016 | 52 | 54 | 0 | $ 3.00 | $ 4.50 | $ 9.00 | $ 13.50 | $ 549.00 | $ 120.00 | $ 429.00 | $ 22,308.00 |
| | 12/31/2016 | 11/30/2017 | 48 | 54 | 0 | $ 3.00 | $ 4.50 | $ 11.00 | $ 16.50 | $ 671.00 | $ 120.00 | $ 551.00 | $ 26,448.00 |
| | | | | | | | | | | | | | $ 107,453.00 |
| | | | | | | | | | | | | TOTAL: | $ 276,690.13 |

1 This chart is based upon preliminary information and the expected testimony of Plaintiffs.
2 Plaintiffs reserve the right to correct or amend this chart.
3 This Chart was prepared without the benefit of discovery, or the benefit of Defendants' required wage and hour records under the FLSA and NYLL.

Privileged Settlement Communication                                                                                                      Subject to Revision / Correction

| Plaintiff | Pay Period From | To | Liq. Damages on Wages & OT | Unpaid Spread of Hours (SOH) Pay | Liq. Damages on unpaid SOH | Annual Wage Notice | | | 45000 |
|---|---|---|---|---|---|---|---|---|---|
| Gerardo Tepox Gutierrez | 6/1/2012 | 10/31/2012 | $ 6,132.50 | $ - | $ - | $ 5,000.00 | | | |
| | 11/1/2012 | 12/31/2012 | $ 3,209.63 | $ - | $ - | | | | |
| | 1/1/2013 | 10/31/2013 | $ 11,986.25 | $ - | $ - | | | | |
| | 11/1/2013 | 12/31/2013 | $ 3,209.63 | $ - | $ - | | | | |
| | 1/1/2014 | 10/31/2014 | $ 13,760.00 | $ - | $ - | | | | |
| | 11/1/2014 | 12/31/2014 | $ 3,672.00 | $ - | $ - | | | | |
| | 1/1/2015 | 10/31/2015 | $ 15,533.75 | $ - | $ - | | | | |
| | 11/1/2015 | 12/31/2015 | $ 4,134.38 | $ - | $ - | | | | |
| | 1/1/2016 | 10/31/2016 | $ 16,125.00 | $ - | $ - | | | | |
| | 11/1/2016 | 12/31/2016 | $ 4,288.50 | $ - | $ - | | | | |
| | 1/1/2017 | 10/31/2017 | $ 20,855.00 | $ - | $ - | | | | |
| | 11/1/2017 | 12/31/2017 | $ 5,521.50 | $ - | $ - | | | | |
| | 1/1/2018 | 5/23/2018 | $ 11,900.00 | $ - | $ - | | | | |
| | | | $ 120,328.13 | $ - | $ - | $ 5,000.00 | 0.4349 | | 19570 |
| | | | | | | | | | |
| Santos Tarax | 8/1/2016 | 10/31/2016 | $ 5,577.00 | $ - | $ - | $ 5,000.00 | | | |
| | 11/1/2016 | 12/31/2016 | $ 4,774.50 | $ - | $ - | | | | |
| | 1/1/2017 | 10/31/2017 | $ 23,693.00 | $ - | $ - | | | | |
| | 11/1/2017 | 12/31/2017 | $ 6,115.50 | $ - | $ - | | | | |
| | 1/1/2018 | 4/1/2018 | $ 8,749.00 | $ - | $ - | | | | |
| | | | $ 48,909.00 | $ - | $ - | $ 5,000.00 | 0.1768 | | 7954.4 |
| | | | | | | | | | |
| Rodrigo Tepox | 12/1/2012 | 12/30/2013 | $ 18,046.00 | | | $ 5,000.00 | | | |
| | 12/31/2013 | 12/30/2014 | $ 19,136.00 | | | | | | |
| | 12/31/2014 | 12/30/2015 | $ 21,515.00 | | | | | | |
| | 12/31/2015 | 12/30/2016 | $ 22,308.00 | | | | | | |
| | 12/31/2016 | 11/30/2017 | $ 26,448.00 | | | | | | |
| | | | $ 107,453.00 | $ - | $ - | $ 5,000.00 | 0.3884 | | 17476 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | $ 276,690.13 | $ - | $ - | $ 15,000.00 | | $ 291,690.13 | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | Filing Date | | 5/11/2018 | | | | |
| | | | FLSA | | 5/11/2015 | | | | |
| | | | NYLL | | 5/11/2012 | | | | |
| | | | Amendment | | 4/9/2011 | | | | |
| | | | Today | | 9/7/2021 | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

2 of 2

### Michael Faillace & Associates, P.C.
60 East 42nd Street
Suite 4510
New York, NY 10165

Ph:(212) 317-1200          Fax:(212) 317-1620

Gerardo Tepox Gutierrez                                          September 7, 2021

|  |  |
|---|---|
| File #: | BrasserieAth |
| Inv #: | Sample |

**Attention:**

**RE:**     Gerardo Tepox Gutierrez v. 300 West 46th St. Corp., SDNY Index No. 18-cv-4239

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| Apr-16-18 | Initial consultation with MF Santos Tarax | 1.00 | 450.00 | MF |
| Apr-30-18 | Initial consultation with MF Lorenzo Antonio Bravo Bravo | 1.00 | 450.00 | MF |
| | Initial consultation with MF Gerardo Tepox Gutierrez | 1.00 | 450.00 | MF |
| May-07-18 | discussed case with client | 0.10 | 45.00 | MF |
| May-09-18 | Drafted Complaint | 3.00 | 1,350.00 | MF |
| May-22-18 | had telephone conference with client | 0.20 | 90.00 | MF |
| Jun-04-18 | review complaint and client intakes | 0.10 | 45.00 | JA |
| Aug-14-18 | discussed status of case with staff | 0.10 | 45.00 | MF |
| Nov-07-18 | reviewed case and discussed case with JA | 0.40 | 180.00 | MF |
| | reviewed case with JA | 0.10 | 45.00 | MF |
| Feb-07-19 | draft mediation statement | 0.80 | 320.00 | JA |
| Mar-05-19 | review case notes in preparation for | 0.10 | 40.00 | JA |

|  |  |  |  |  |
|---|---|---|---|---|
|  | mediation statement; call D attorney to check in on any offer |  |  |  |
| Mar-08-19 | draft and submit  mediation statement | 0.50 | 225.00 | JA |
| Mar-14-19 | prepare for and attend mediaiton | 3.20 | 1,280.00 | JA |
|  | Attend mediation with Attorney and clients to translate all proceedings | 2.50 | 250.00 | PL |
| Apr-30-19 | review case file, request initial conference | 0.20 | 80.00 | JA |
| Jun-13-19 | call and email with D attorney re adjournment | 0.10 | 40.00 | JA |
| Jul-18-19 | prepare for initial conference | 1.00 | 400.00 | JA |
| Jul-19-19 | prepare for and attend conference | 1.20 | 540.00 | JA |
| Nov-27-19 | draft discovery responses | 0.50 | 200.00 | JA |
| Dec-16-19 | draft discovery responses | 0.30 | 120.00 | JA |
| Dec-26-19 | draft discovery responses | 1.00 | 400.00 | JA |
| Jan-06-20 | draft discovery responses | 0.40 | 160.00 | JA |
| Jan-17-20 | review draft discvoery responses and email paralegal J Rivas re more information needed | 0.10 | 40.00 | JA |
| Feb-25-20 | draft discovery responses | 0.50 | 200.00 | JA |
| Feb-26-20 | draft and serve discovery responses | 0.50 | 200.00 | JA |
| Mar-10-20 | draft and serve discovery responses | 0.50 | 200.00 | JA |
| Mar-18-20 | draft interrogatory responses and response to request for admissions | 0.90 | 360.00 | JA |
| Apr-07-20 | Draft responses to requests for admissions | 0.70 | 280.00 | JA |
| Apr-27-20 | draft responses to requests for admission | 0.30 | 120.00 | JA |
| Apr-28-20 | draft request for admission responses | 0.20 | 80.00 | JA |

| Date | Description | Hours | Amount | Init |
|---|---|---|---|---|
| May-19-20 | call with paralegal J Rivas re status of discovery responses | 0.10 | 40.00 | JA |
| May-28-20 | finalize and serve responses to request for admissions | 0.50 | 200.00 | JA |
| Jun-25-20 | review correspondence from Defendants attorney re discovery; draft transfer memo | 0.50 | 200.00 | JA |
| Jul-02-20 | review case file including complaint, answer, discovery produced b both parties and take notation, notes of strategy | 1.20 | 420.00 | GN |
| Jul-03-20 | email w/ JA and pl | 0.10 | 35.00 | GN |
| Jul-06-20 | review correspondence | 0.10 | 40.00 | JA |
| Jul-07-20 | Review re Partner Email | 0.10 | 45.00 | |
| Jul-09-20 | telephone call w/ pl re: discovery requests | 0.10 | 45.00 | GN |
| Jul-10-20 | text w/ pl re: discovery demands | 0.10 | 35.00 | GN |
| | review and edit discovery requests | 0.40 | 140.00 | GN |
| Jul-13-20 | review and reply to pl email re: serving discovery | 0.10 | 35.00 | GN |
| Jul-16-20 | review case file for opposing counsel , email pl | 0.00 | 0.00 | JA |
| | email w/ pl re: mailing discovery | 0.10 | 45.00 | JA |
| Jul-17-20 | text w/ pl re: cert of service of discovery | 0.10 | 35.00 | GN |
| Jul-23-20 | discuss discovery demands w/ pl | 0.20 | 70.00 | GN |
| Jul-27-20 | telephone call w/ opposing counsel | 0.20 | 70.00 | GN |
| Jul-30-20 | notate file | 0.10 | 35.00 | GN |
| | review bravo noa | 0.10 | 35.00 | GN |
| Jul-31-20 | email pl re: cl bravo bravo | 0.10 | 35.00 | GN |
| Aug-02-20 | email w/ pl re: bravo bravo cl | 0.10 | 35.00 | GN |

|  |  |  |  |  |
|---|---|---|---|---|
|  | email opposing counsel re: payment terms instead of judgment | 0.10 | 35.00 | GN |
|  | review pl email to cl bravo bravo | 0.10 | 35.00 | GN |
| Aug-05-20 | had telephone conference with client and explained that the case was delayed due to his fellow client not responding to the notice to admit   and interrogatories that defendants sent | 0.10 | 45.00 | MF |
|  | Call with client, asking about status of lawsuit | 0.10 | 12.50 | PL |
| Aug-13-20 | email w/ opposing counsel re: discovery | 0.10 | 35.00 | GN |
| Aug-15-20 | review opposing counsel deficiency letter and email and review case file and reply | 0.20 | 70.00 | GN |
| Sep-24-20 | telephone call w/ opposing counsel re: discovery, email pl | 0.10 | 35.00 | GN |
| Oct-08-20 | call court | 0.20 | 70.00 | GN |
| Jan-14-21 | Reviewed joint request for extension of time to complete discovery;  directed staff to update case chart ;  filed notice in the proper folder for future reference | 0.30 | 135.00 | MF |
| Jan-22-21 | had telephone conference with DT and   discussed the call we need to make to client in Mexic o; called client in Mexico | 0.50 | 225.00 | MF |
| Feb-11-21 | reviewed magistrate's court order setting date for settlement conference; directed staff to update case chart | 0.30 | 135.00 | MF |
| Mar-08-21 | reviewed magistrate's court order rescheduling date for settlement conference; directed staff to update case chart | 0.30 | 135.00 | MF |
| Mar-15-21 | : reviewed  defendants'  request to adjourn conference | 0.30 | 135.00 | MF |
| Apr-20-21 | reviewed letter filed by defendants requesting extension of discovery deadline | 0.30 | 135.00 | MF |
| Apr-22-21 | : reviewed court order granting defendants request for extension of discovery deadline | 0.30 | 135.00 | MF |
| May-18-21 | settlement confrence | 3.00 | 1,050.00 | GN |

| Date | Description | Hours | Amount | Initials |
|---|---|---|---|---|
| Jul-21-21 | emailed PL re: settlement deadline | 0.10 | 37.50 | KH |
| Jul-22-21 | emailed defense counsel re: second letter for extension of time | 0.10 | 37.50 | KH |
| | drafted second letter re: letter for extension of time | 1.00 | 375.00 | KH |
| | revised second letter re: letter for extension of time and emailed defense counsel back | 0.10 | 37.50 | KH |
| Aug-05-21 | drafted and filed  motion to withdraw | 1.00 | 375.00 | KH |
| Aug-23-21 | emailed defense counsel my redlined review and comments on the negotiated settlement agreement | 0.10 | 37.50 | KH |
| | drafted third letter re: extension of time to file settlement agreement | 1.00 | 375.00 | KH |
| Sep-01-21 | emailed defense counsel re: settlement edits | 0.10 | 37.50 | KH |
| Sep-03-21 | emailed defense counsel back  re: settlement edits | 0.10 | 37.50 | KH |
| | emailed defense consel re: joint motion | 0.10 | 37.50 | KH |
| Sep-07-21 | emailed defense counsel re: joint motion and negotioated settlement agreement | 0.10 | 37.50 | KH |
| | emailed defense counsel re: fairness letter | 0.10 | 37.50 | KH |
| | drafted fairness letter | 1.00 | 375.00 | KH |
| | Totals | 38.00 | $14,540.00 | |

## DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| | Filing Fee | 400.00 |
| Jul-20-18 | Process Server 300 West 46th Street Corp | 64.00 |
| Jul-23-18 | Process Server SOTIRIOS KARAMOUZIS | 84.00 |
| | Process Server CHRISTOS DOE- OUT of STATE- RUSH SERVICE | 223.00 |
| | Totals | $771.00 |

**Total Fee & Disbursements**                                **$15,311.00**

**Balance Now Due**                                          **$15,311.00**